UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN COOK, | ) | Case No.: 1:22 CV 1535 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID BOSS, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Defendant City of Cleveland's ("Defendant" or "Cleveland") Motion for Summary Judgment ("Motion") (ECF No. 39). For the reasons that follow, the court grants Defendants' Motion for Summary Judgment with respect to the federal claims. Because the court declines to exercise supplemental jurisdiction over Cook's state law claims pursuant to 28 U.S.C. § 1367(c)(3), Defendants' motion with respect to his state law claims is dismissed as moot.

## I. BACKGROUND

**A.     Factual Background**

On April 2, 2020, Plaintiff John Cook ("Plaintiff" or "Cook") contacted the Cleveland Police Department to report that the vehicle registered to his business, Jaden Construction, LLC, had been stolen. (Amended Compl. ¶¶ 9–10, ECF No. 1-2); (*see also* Ex. A to Messer Decl., ECF No. 39-1). When Officer Brian Messer of the Cleveland Police Department arrived on the scene, Cook informed

Messer that his neighbor had surveillance footage of an unknown White male who had hooked Cook's car to a tow truck and drove away. (Messer Decl. ¶¶ 3–7, ECF No. 39-1). Messer instructed Cook to sign a Stolen Vehicle Statement Form and requested that detectives follow up with the incident. (Id. at ¶¶ 8–10). A few days later, Cook recovered his vehicle and allegedly reported the recovery to a man who identified himself as the Cleveland detective assigned to his case. (Amended Compl. ¶ 12, ECF No. 1-2). On April 8, 2020, Detective James Bellanca of the Cleveland Police Department ("Detective Bellanca" or "Bellanca") spoke with Cook's neighbor, who informed Bellanca that Cook had recovered his vehicle. (Bellanca Decl. ¶¶ 5–6, ECF No. 39-2). Detective Bellanca then asked Cook's neighbor to tell Cook to get in touch with him as Bellanca was having trouble contacting Plaintiff. (*Id.* at ¶ 9). When Cook later called Bellanca, he left a voicemail stating that he had recovered his vehicle and would be completing a "call-off report." (*Id.* at ¶ 10). Under department policy, when a stolen vehicle is recovered, officers must inspect the vehicle and complete a recovery report, also known as a "call-off report." (*See* Cleveland General Police Order, Ex. B to Bellanca Decl. at PageID #509–513, ECF No. 39-2). According to officer notes, as of April 18, 2020, Cook still had not completed a call-off report. (Bellanca Decl. ¶ 12, ECF No. 39-2); (*see also* Cleveland General Police Order, Ex. B to Bellanca Decl. at PageID #508). As a result, the vehicle remained listed as unrecovered in the City's stolen vehicle database. (Bellanca Decl. ¶ 13, ECF No. 39-2). Bellanca was eventually advised to close Plaintiff's file due to an uncooperative witness. (*Id.* at ¶ 12).

On July 30, 2020, Cook was driving his truck in the City of Lyndhurst, Ohio as police officers from the City of Lyndhurst ("Lyndhurst") were driving behind him. (Amended Compl. ¶ 13, ECF No. 1-2). When City of Lyndhurst officers ran a license plate check on the vehicle, they

discovered the truck had been registered as stolen. (Mot. at PageID #458, ECF No. 39); (*see also* Amended Compl. ¶¶ 16–17, ECF No. 1-2). The Lyndhurst officers then initiated a traffic stop on Cook's vehicle, ordering Cook to turn off the vehicle and exit the car with his hands up. (Amended Compl. ¶¶ 18–19, ECF No. 1-2). The officers then ordered Plaintiff to place his hands on his head and get on his knees before cuffing him with two pairs of handcuffs. (*Id.* at ¶¶ 20–22). Plaintiff complained to officers that the tightness of the handcuffs was hurting his hands and wrists so officers adjusted his right handcuff. (*Id.* at ¶ 24). Plaintiff alleges he once again complained to officers that he was experiencing significant pain and numbness in his hands, but the officers took no action. (*Id.* at ¶ 25). Meanwhile, other officers walked with Cook's wife into their home, which was located on the same street where officers had executed the traffic stop, to obtain proof that Cook's car was actually his. (*Id.* at ¶ 26). Once his wife provided proof of ownership, the officers removed the handcuffs. (*Id.* at ¶¶ 27–28). Later that day, the Lyndhurst Police Department contacted the Cleveland Police Department to inform it that Cook's vehicle had been recovered. (Mot. at PageID #459, ECF No. 39). Cook's truck was then removed from the stolen vehicle database. (*Id.*); (*see also* Ex. A to Messer Decl. at PageID #490, ECF No. 39-1).

**B.  Procedural History**

On July 30, 2022, Cook filed a Complaint (ECF No. 1-1) in the Cuyahoga County Court of Common Pleas against Officers David Boss, Kelly Vasas, Jonathon Romanin, Justin Blatnick (collectively, the "Lyndhurst Officers"), the City of Cleveland, the City of Lyndhurst, and five unidentified "John Doe" Defendants, alleging injuries he suffered growing out of the incident described above. On August 17, 2022, Cook filed an Amended Complaint (ECF No. 1-2), alleging violations of his constitutional rights under 42 U.S.C. § 1983, as well as claims of assault/battery,

false arrest/imprisonment, intentional infliction of emotional distress ("IIED"), negligence, and employer liability. (*See* Amended Compl. at PageID #23–32, ECF No. 1-2). The case was removed to this court pursuant to 28 U.S.C. § 1441 *et seq*. (ECF No. 1) on August 31, 2022. On September 7, 2022, the City of Cleveland filed an Answer (ECF No. 7), denying Plaintiff's allegations and asserting various affirmative defenses. Cleveland also maintained that any injuries Plaintiff allegedly sustained were caused by the acts or omissions of entities other than Cleveland. (Cleveland Answer at PageID #65–67, ECF No. 7). On August 15, 2023, Cleveland filed the Motion for Summary Judgment considered herein. (ECF No. 39).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). In reviewing summary judgment motions, this court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing*

*Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). The moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* If the moving party meets its burden of production, then the non-moving party must point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Zinn*, 885 F. Supp. 2d at 871 (quoting *Fulson*, 801 F. Supp. at 4). The trial court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citation omitted)).

### III.  LAW AND ANALYSIS

**A.    Section 1983 claims**

   *1.    Statute of Limitations*

Cleveland argues that Cook's Section 1983 claims are barred by the applicable statute of limitations. Congress did not establish a statute of limitations for Section 1983 claims. *See Drake v. City of Detroit*, 266 Fed.Appx. 444, 448 (6th Cir. 2008) (citing *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003)). As a result, "federal courts must borrow the statute of limitations

governing personal injury actions in the state in which the section 1983 action was brought." *City of Whitehall*, 344 F.3d at 553. The Sixth Circuit has long held that a two-year statute of limitations applies to Section 1983 claims arising in Ohio. *Id.* (citing *Browning v. Pendelton*, 869 F.2d 989, 990 (6th Cir. 1989) (en banc)). However, when a plaintiff amends their Complaint after the statute of limitations has run, the amendment must "relate back" to the original Complaint for the amendment to be timely. *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 317–19 (6th Cir. 2010); *see also Anderson v. Clark*, 2024 WL 665544, at *1 (W.D. Ky. Feb. 16, 2024). Under the Federal Rules of Civil Procedure, "[a]n amendment to a pleading relates back to the date of the original pleading when...the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see also Asher*, 596 F.3d at 318 ("Rule 15(c)(1)(B) allows relation back of an amendment asserting a "claim or defense," but it does not authorize the relation back of an amendment adding a new party.") (emphasis in original). Here, Plaintiff filed his original Complaint (ECF No. 1-1) on July 30, 2022, followed by an Amended Complaint (ECF No. 1-2) on August 17, 2022. Although Plaintiff's Amended Complaint falls outside the two-year statute of limitations since the incident giving rise to this suit took place on July 30, 2020, Cook argues that the "relation back" doctrine under Federal Rule of Civil Procedure 15(c) makes his Complaint timely. The court agrees. The allegations in Cook's Amended Complaint arose from the same occurrences and conduct in his Original Complaint: the officers' alleged excessive use of force and other tortious conduct surrounding Cook's detention on July 30, 2020. (*Compare* Amended Compl. at PageID #23–32, ECF No. 1-2 *with* Original Compl. at PageID #8–12, ECF No. 1-1). Accordingly, the court finds that

Plaintiff's Amended Complaint relates back to his original timely Complaint, meaning that the statute of limitations does not bar Cook from bringing his Section 1983 claim.

*2. Merits*

Section 1983 provides a remedy for any person who is deprived of their constitutional rights by another person acting under the color of state law. *See* 42 U.S.C. § 1983; *see also Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). When assessing a Section 1983 claim asserted against a municipality, courts must consider two issues: "(1) whether the plaintiff's harm was caused by a constitutional violation and (2) if so, whether the city is responsible for that violation." *City of Harker Heights*, 503 U.S. at 120 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985)). Most cases turn on the latter of the two issues. *See City of Harker Heights*, 503 U.S. at 120.

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the Supreme Court held that a municipality can only be found liable under Section 1983 if the municipality *itself* causes the alleged constitutional violation at issue by executing an official policy or custom that causes the alleged injury. *See Tuttle*, 471 U.S. at 817 (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)) (emphasis in original). In this regard, municipalities may be liable under Section 1983 for constitutional violations resulting from a failure to train its municipal employees. *City of Canton*, 489 U.S. at 380. In light of these constraints, the "first inquiry in any case alleging municipal liability under § 1983 is [...] whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.*

a) Excessive Force claim

In his Amended Complaint, Cook's Section 1983 claim alleges an excessive use of force claim, in part, as follows:

> "Without probable or just cause or reasonable suspicion or good faith evidence, the Defendants arrested the Plaintiff, physically forced, and assaulted him, restrained the Plaintiff and his freedoms, verbally and/or physically harassed the Plaintiff, among other unconstitutional, illegal, improper, and otherwise tortious conduct.
>
> At all times relevant, despite allegations of the Defendants, the Plaintiff did not make any substantive threatening gestures or exhibited any violent or otherwise resistive behavior toward the Defendants and the Plaintiff complied with the commands of the officers in question.
>
> Immediately after being handcuffed, and several times thereafter, the Defendants caused significant pain and suffering to the Plaintiff and failed and/or refused to alleviate the problem and/or allow the Plaintiff to seek medical attention, observation, care, and/or treatment.
>
> Said use of excessive and unnecessary force, search, seizure, and destruction deprived the Plaintiff of his Constitutional rights to bodily security and liberty protected by the Fourteenth Amendment to the United States Constitution and was an unreasonable physical seizure of the Plaintiff protected by the Fourth Amendment to the Constitution of the United States, Article I, Section 14, Ohio Constitution, and/or otherwise."

(Amended Compl. ¶¶ 45–48, ECF No. 1-2). Elsewhere in his Amended Complaint, Plaintiff alleges that "Defendants City of Lyndhurst and/or City of Cleveland were responsible for the training, supervision and/or commission of Defendant Officers, and were also responsible for the business policies, instructions, and employee conduct. Defendants City of Lyndhurst and/or City of Cleveland executed policy and/or custom and/or officially and/or personally sanctioned, ordered, ratified, and/or failed to properly instruct, train, employ, retain, or otherwise the relevant tortious, illegal, and unconstitutional acts and behavior of Defendants Officers." (*Id.* at ¶¶ 42–43).

Cleveland argues, in part, that it is entitled to summary judgment on Plaintiff's excessive force claim because Plaintiff admits that "none of Cleveland's officers detained him, arrested him or so much as touched him." (Mot. at PageID #463, ECF No. 39) (citing Cook Dep. at PageID

-8-

#1570–71, ECF No. 42-2). Cleveland further argues that Plaintiff has failed to allege or establish any facts demonstrating that an official custom or policy of the City of Cleveland led to his alleged constitutional violation. Specifically, Plaintiff has not established any facts to support his contention that Cleveland has any deficiencies in its training, supervision, or oversight of its officers. (Mot. at PageID #463–66, ECF No. 39). In response, Plaintiff contends that his Section 1983 claim is "based on his sufficiently pled allegations that Defendant City of Lyndhurst has a policy of inadequately training its police officers on stops, detentions/arrests, handcuffing, and when and how they are permitted to enter private property in the course of their duties." (Pl.'s Opp. at PageID #1764, ECF No. 51-1). However, Plaintiff does not point to any evidence or facts in the record demonstrating what official policy or custom *Cleveland* relied on that resulted in his alleged excessive force claim. This is despite Plaintiff's contention that "the evidence in this matter clearly shows genuine issues of material facts regarding the liability of Defendant Cleveland." (Pl.'s Opp. at PageID #1766, ECF No. 51-1). Accordingly, there is no basis to hold Cleveland liable for an allegation for use of excessive force when Plaintiff admits that no Cleveland employees were present at the incident giving rise to this claim and grants summary judgment to Cleveland.

        b)        Stolen Vehicle Database claim

In addition to his excessive force claim, Plaintiff's Complaint can be fairly read to allege a failure to train claim against Cleveland for its employees' failure to remove his truck from the city's stolen vehicle database. However, Plaintiff did not name or add any Cleveland officers or employees as defendants to this suit. In its Motion, Cleveland maintains that Plaintiff's vehicle was not removed from the stolen vehicle database because Plaintiff failed to complete Cleveland's process for removing a vehicle reported as stolen from the city's internal systems. (*See* Bellanca Decl., ECF No.

39-2); (*see also* Cleveland General Police Order, Ex. B to Bellanca Decl., ECF No. 39-2). Specifically, Cleveland attests that Plaintiff informed Detective Bellanca that he had recovered his truck and would be "taking the vehicle to complete a call-off report." (Bellanca Decl. at PageID #497, ECF No. 39-2). In response, Plaintiff argues that because he called Detective Bellanca to inform him that he had recovered his vehicle, his car should have been removed from the stolen vehicle database. (*See* Pl.'s Opp. to Mot. at PageID #1767, ECF No. 51-1).

Plaintiff does not address Cleveland's declaration that he told Detective Bellanca that he was taking his car to complete a call-off report. Instead, Plaintiff argues that Cleveland's own policy indicates that Cleveland was required "to do what was necessary to confirm that the vehicle was recovered by the Plaintiff and/or remove the vehicle as stolen/not recovered." (*Id.* at PageID #1767–68). Accordingly, Plaintiff argues his Section 1983 claim "asserts liability against Cleveland for a failure to supervise, train, and take corrective measures and violation of its policies." (*Id.* at PageID #1768). In Reply, Cleveland argues that Plaintiff cannot establish a failure to train claim against it because Plaintiff cannot show that Cleveland was deliberately indifferent with respect to its training of its officers with respect to the recovery of stolen vehicles. The court finds Cleveland's arguments persuasive.

In order to establish a failure to train or supervise claim under Section 1983, a plaintiff must prove that: "(1) the training or supervision of city employees was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Mosier v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024) (citing *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). To make a showing of deliberate indifference, plaintiff must show the municipality

"completely disregarded" its duty to train evidenced by "total inaction in the face of repeated, known, rights violations." *Id.* (citations omitted). Plaintiff does not allege any facts or introduce any evidence that Cleveland exhibited a pattern of inaction in the face of repeated, known violations of people's rights in respect to their stolen vehicles. Without any of the above, Cook cannot establish the essential elements of his *Monell* claim. *See Celotex Corp.*, 477 U.S. at 331 (explaining that, on a summary-judgment motion, a moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.") (emphasis added). Accordingly, the court grants summary judgment to Cleveland on this claim.

**B.     State law claims**

Federal courts may exercise supplemental jurisdiction over state law claims that are so related to claims for which the court has original jurisdiction, such that the state claims form part of the same case or controversy under the court's original jurisdiction. *See* 28 U.S.C. § 1367(a). However under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim [...] if the district court has dismissed all claims over which it has original jurisdiction." The Supreme Court has long held that where federal law claims are dismissed before trial, district courts should generally decline to exercise supplemental jurisdiction over the related state law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Poindexter v. McKee*, 444 F.Supp.2d 783, 786 (W.D. Mich. 2006) (collecting cases). Having dismissed Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over Cook's remaining state law

claims. *See Poindexter*, 444 F.Supp.2d at 786; *see also Vos v. Cordray*, 719 F.Supp.2d 832, 842–43 (N.D. Ohio 2010).

## IV.  CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment with respect to Plaintiff's federal claims and declines to exercise supplemental jurisdiction (ECF No. 39).

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

March 30, 2024